FRAZIER, J.
(Orally.)
The case of the Pennsylvania Co. y. Vina Hammond, as administratrix of William E, Hammond, deceased, is a petition in error, the subject of which is to reverse a judgment of the court of common pleas.
Defendant’s intestate,' William E, Hammond, was fireman upon a through fast freight train running between the city of Allegheny, Pa., and Crestline, Ohio, designated as first section of No. 75, Pittsburgh, Ft. Wayne & Chicago Railway. The crew consisted of O. D. Conklin, conductor; Andrew Brady, engineer; William E. Hammond, (defendant’s intestate) fireman; George Glenn, front brakeman, and Emory E, Bunn, rear brakeman.
Ata place called Millbrook, sections 1 and 2 of number 75 laid upon the siding to allow east-bound trains having superior right of way to pass, among which was the limited mail or fast express train, designated as No. 8 of the Pittsburgh, Ft. Wayne & Chicage Railway. The testimony shows this crew and probably the crew of the second section, while waiting, went asleep.
The view which we take of the case maxes it unnecessary to notice but few of the alleged errors assigned or suggested in argument. The plaintiff below was permitted to prove that after they *728 pulled into the siding, Hammond was allowed to lie down on the fireman’s seat at the left hand side of the cab, and next the track upon which the trains for which they were waiting would pass.
The engineer testified that Hammond lay down a few minutes— probably eight or ten, after they had pulled into the siding; and being asked as to the rules of the company, says, he knows of no rule in the book of rules of the company that would prohibit the fireman from lying down in his cab.
The plaintiff below claimed and endeavored to prove that it was the habit of trainmen, with the knowledge of the superiors of the crew, to go to sleep when lying on sidings, awaiting passing trains. The engineer testifies that he did not, upon that night, but that he had before, probably on the run before, instructed Hammond that he should keep watch ; that he was upon the side next the passing trains, and to observe their signals. That, if Hammond had therefore slept while waiting, he did not know it; that on a former occasion when he had spoken to him, he answered and claimed he was not asleep.
Brady, the engineer, upon being asked to state briefly why he pulled out of the siding, says: “I pulled out of the siding on the main track on the strength of the orders from the conductor; he said No. 8 had gone, and that Martin who was conductor of second 75, said we had been lying half an hour since No. 8 nad gone, and if I didn’t get out of there he would back out and run around us. I supposed they had seen No. 8, or else they would not have told me to go, and I had been asleep myself and didn’t know whether it was gone or not. ”
After the conductor, who, with thebrakemen, was in the caboose, had sent a brakeman forward with the order to pull out, coupled with the statement that Martin claimed No. 8 had passed, and threatened if they did not pull out he would run around them, upon inquiry by the engineer, whether it had in fact passed, Hammond said he did not know, he had been asleep. The petition charges, and the plaintiff below seeks to rocovar on the ground that the conductor and engineer started, or went upon the track after being informed by Hammond he had been asleep, and did not know whether No. 8 ha'd passed or not. The engineer testifies that aftar the brakeman, who brought the order from the conductor with the statement that Martin said No 8 had passed,opened the switch, he received from the fireman, Hammond, the signal to pull out — it was all right, which meant the train was all coming.
In a short time after they started, and while running at full speed, they met and collided with No. 8, killing Hammond, the fireman, and Glenn, the front brakeman, and making complete wreck of No. 8, counsel for plaintiff in argument says, causing the greatest loss of life and property in the history of the road
The company had published and furnished to each of its employes, a book of rules, and it is testified that a copy was in possession of plaintiff’s intestate, who had contracted to study and become familiar therewith, and be governed thereby. Portions of this book were offered in evidence covering several pages of the record, by which, with others,it is made the duty of the fireman to assist the engineer and keep constant lookout for.flags and signals on passing trains and inform the engineer of that fact. He is equally charged with conductors and engineers in protecting the train and the property of the company, and preventing collisions, and to enabje him the, better to do so, the rules of the company reg *729 ulating special train orders, provide : ‘Enginemen must show orders to firemen and to front brakemen as soon as possible. Conductors must show orders to flagmen.”
There was a telegraph office and an operator at Milbrook,one-half mile east of or in the rear of, where the train lay. No inquiry was made at the telegraph office to ascertain if No. 8 had passed, and deceased knew no special train order had been received. Plaintiff's decedent had the same opportunity of knowing as the conductor and engineer, and knew they had no knowledge or information where No. 8 was, other than the claimed statement of Martin, and were acting upon that alone.
Upon this state of facts, the court, in connection with other tilings, charged the jury:
“I have said to you that before negligence of the defendant would become culpable negligence, that is, such negligence as would entitle the plaintiff to a recovery, you must find that it was the proximate cause of the injury to the plaintiff’s decedent; that is, the cause directly producing the injury. Such a cause as would naturally and necessarily lead to and produce the result which followed. That is, if the defendant was negligent in running out this train under the circumstances, and that would naturally and necessarily lead to a collision with train 8, which resulted in the death of Hammond, this would then be regarded as being the proximate cause of the injury.The court further charged the jury that: “So far as the negligence of Hammond himself is concerned, it need not necessarily be the direct, proximate cause of the injury which he sustained, but if his acts and.conduct were such as, operating with other causes, produced the injuries resulting in his death, then the plaintiff would not be entitled to recover.”
With these instructions as propositions of law to be applied in a proper case we have no contention, and applying the rule here stated : if Hammond had not gone asleep, but kept a lookout and had kown whether No. 8, and other trains having superior right of way to his train, had passed, observed their flags and s’gnals, and informed the engineer, the collision would not have occurred.
The court further charged the jury: “Upon the question of contributory negligence the burden of proof is upon the defendant, and this makes it incumbent upon the defendant to produce a preponderance of the evidence for the purpose of showing that contributory negligence on the part of Hammond did exist. Hut if the testimony on the part of the plaintiff here offered is of such a character as to raise a presumption of contributory negligence upon the part of Hammond, then the burden of proof would rest upon the plaintiff to rebut and remove this presumption, and to show that contributory negligence did not ‘ ‘exist on his part.”
This is the rule stated in Robinson & Weaver v. Gary. 28 Ohio St., 241, and Railroad Co. v. Whittaker, 35 Ohio St., 627. In these cases the court was stating the law as applicable to the facts then before it. And in Railroad Co. v. Whittaker Johnson J. says:
“Instructions should have special reference to the issues made by the pleadings and the evidence so as,to secure the opinion of the jury on the point at issue. General propositions equally applicable to all cases of the same class, while correct as general rules, sometimes are misleading or incorrect when applied to evidence which varies the rule as to the rights and duties of the parties in the special case.”
When from the evidence (as in this case) there can be no other *730 inference but that of negligence on the part of the plaintiff, it is the duty of the court to instruct the jury that the burden is on the plaintiff to remove the presumption thus raised.
Counsel for plaintiff insist that the last paragraph of the charge is misleading. After the court had apparently completed the charge and instructed the jury, upon their retirement to choose one of their numoer as foreman ; and given the usual caution for their conduct if they should separate before agreeing upon a verdict,he says: “In determining whether or not the defendant was guilty of negligence it being admitted that it is a corporation and that negligence will have to be determined from the acts of the agents or 'persons to whom the business of the defendant was entrusted by it, and if in this case you find under the rules the defendant had entrusted the control and management of its train to its c nductor and enginemen, and they were negligent and their negligence was the proximate cause of the injury, their negligence in that event would be the negligence of the defendant itself, and for their negligence if any, liability resulted against the defendant,or fort-heir negligence, the defendant would be liable, if liable at all.”
It is complained that this coming as an additional or separate instruction, it was not sufficient to guard tüe jury upon the question of contributory negligence to add merely, “if liable at all.” And that it was, in connection with the testimony, misleading.
In Railroad Co. v. Leech, 41 Ohio St., 388, the syllabus is:
“A section boss on a railroad and his crew took a hand car to go from Reed’s Mill to a switch about one-half mile east, where they would go from the main track upon a second track on their way to work. A passenger train which should have passed that point one hour and a half before, was behind time. It overtook and, running into the hand car, killed one of the section men. The foreman did not know and had no reason to believe that the train had not passed, and did not send to or go to the telegraph office, which was cne mile distant, to ascertain about the passenger train. The deceased did not know of the whereabouts of the belated train, although he had the same opportunity of knowing as the foreman. There was no carelessness in the running of the train. Held: That the railroad company could not be required to respond in damages to the representatives of the deceased, as he voluntarily and without protest mounted and rode upon the hand car.”
In the case at bar, if there had been no duty imposed upon the deceased by reason of his employment as fireman under the rules of the company, the evidence shows he had the same knowedge — the same means of knowing, whether No. 8 had passed as had the conductor and engineer. He knew they did not know, and were acting upon the reported statement of Martin, and with this knowledge he voluntarily, without protest, assented to the moving of the train and gave the signal to pull out — “all right, the train is all coming” — and took his place in the cab. There was no negligence in the running of train No 8, and a collision could not have been averted after it had been discovered the freight train had started. Upon these facts we hold the company is no liable. But additional duties were cast upon deceased as fireman by reason of his contract and the rules of the company to keep watch and know whether Ño.
8 and other trains having superior right of way over his train had passed, and if he was asleep and failed to do so, he is guilty of such contributory negligence as will prevent a recovery.
The court charged the jury that if the deceased could not recover *731 had he survived, the plaintiff, his administrator, cannot recover.
Carey, Boyle & Mullins, for Plaintiff.
James Kennedy, for Defendants.
it is also true, where the master is sued for the negligence or wrong of the superior servant, the injured party cannot recover against the master unless he would be entitled to recover against such servant, if the action was against him instead of the master.
Testing this case by these rules, if Hammond had survived and brought suit against Brady, the engineer, charging Brady with having gone asleep as the cause of the injury, and that, if Brady had not gone asleep, he would have known No. 8 had not passed, and knowing that, would not have moved his train from the siding, and the collision and consequent injury would not have occurred.
Would it be contended that Hammond, the fireman, upon whom the duty rested equally with Brady, the engineer, to protect the train and know whether No. 8 had or had not passed and to inform the engineer if it passed, also went asleep and did not know whether No. 8 had passed, could recover in an action against Brady for injuries received in the collision, when, if either had remained awake and kept a lookout as their duty by reason of their contract and the rules of the company required, the train would not have left the siding and the injury would not have occurred.
As to third persons, it is no excuse for the company, if the conductor and engineer are negligent, that they went asleep, that the fireman also was negligent and went asleep; but when the fireman whose duty it was equally with the conductor and engineer to watch, to be vigilant, is seeking to recover, he must himself be free from contributory negligence.
The, record warrants us in saying if Hammond had remained awake, as was his duty, the injury to him would not have occurred.
We hold, under the uncontroverted facts, upon the authority of Railway Co. v. Leech, supra, that Hammond having when he went upon the train, the same means of knowing and the same knowledge as the conductor and engineer had, the company is not bound to respond in damages. Much less is the company liable where, as in this case, he had an active duty to perform. He was placed there as a sentinel and guard for the purpose of protecting, and it was his duty under his contract, and the rules of the company, to be vigilant in protecting the property of the company and the lives of passengers who might be exposed to collision with passing trains. He not only neglecte'd that duty, was not only guilty of contributory negligence in not keeping that watch, which an ordinarily prudent man under like circumstances is accustomed to do, but was guilty of culpable negligence in going asleep while on duty.
We hold that, upon the uncontroverted facts, he was guilty of such negligence as will prevent a recovery by the plaintiff; and the court of common pleas erred in not granting anew trial. For these reasons and for the reason that the verdict is not supported by the evidence, the judgment is reversed.